UNITED STATES DISTRICT COURT

DISTRICT OF VERMONT

| | |
|---|---|
| PLH VINEYARD SKY LLC and APPLE HILL SOLAR LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>TOWN OF BENNINGTON<br><br>    Defendant | Case No. 2:25-cv-469 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES PLH Vineyard Sky LLC ("PLH") and Apple Hill Solar LLC ("Apple Hill" or "AHS", and collectively with PLH, the "Plaintiffs") by way of complaint against the Town of Bennington (the "Town") which respectfully files this petition for declaratory relief.

**NATURE OF THE ACTION**

1. On October 6, 2015, the Town of Bennington by action of the Select Board adopted a Town Plan (the "2015 Town Plan"). Under 24 V.S.A. §4387(a), the 2015 Bennington Town Plan was set to expire after 8 years on October 6, 2023. Under 24 V.S.A. §4385, a municipality can amend its town plan at any time, however, under 24 V.S.A. §4385(d) an amendment to a plan does not affect or extend the plan's expiration date. Under 24 V.S.A. §4387(b)(1), a municipality may readopt an entire town plan that has expired or about to expire; provided that the Town satisfies a number of requirements including, *inter alia*, certain notice requirements and that the planning commission reviews and updates the information on which the plan is based. In 2016, Vermont House Bill 367 was passed into law and modified 4 V.S.A. §4387(b) by adding several other requirements for a municipality to readopt a town plan, including more extensive public

1

participation than previously required. Thoe new requirements of HB 367 are enumerated in 24 V.S.A. §4387(b)(1)(A) through (G), including a requirement of community outreach and involvement (24 V.S.A. §4387(b)(1)(B)).

2. The town plan readoption process, as modified by HB 367, is formidable and will often take years to accomplish. For example, the Town has hired consultants to assist it with creating the next version of its Town Plan and has been working on that version for the last two years.[1] That is not surprising given that HB 367 requires the planning process be opened to the public and that the public is to be involved in the process.

3. Rather than engage in community outreach and involvement in updating the 2015 Town Plan as required by statute, the Town opted to try to buy itself several more years. The way in which the Town attempted to do that was to claim that the 2015 Town Plan had actually been re-adopted in 2018 when the Town passed the Energy Amendment, such that the Town Plan would not expire in 2023 but in 2026. The obvious issue with that scheme is that the town plan adoption process in 24 V.S.A. §4302 and §§4381-4387 cannot be circumvented and nothing that was actually required of the Town to re-adopt the Town Plan was actually accomplished in 2018.

4. Thus, the 2015 Town Plan expired on October 6, 2023. There are real consequences of a town plan expiring in Vermont as the Town of Calais recently discovered, when the expiration of their town plan made them ineligible for grants that require Towns to have a duly adopted and current Town Plan.[2] The major difference between Calais and Bennington, however, is that the

---

[1] https://benningtonvt.org/services/planning___permitting/planning_commission/town_plan_update1.php

[2] https://www.timesargus.com/news/local/expired-plan-nullifies-zoning-changes/article_c018dbf2-ac24-11ef-a5b9-af741d61a594.html.

Town of Calais actually owned up to the fact that their Town Plan expired whereas the Defendant have continued to actively deny it. Plaintiffs ask this Court to declare that the 2015 Town Plan expired on October 6, 2023. The expiration of the Town Plan directly impacts the disposition of the pending petition for certificate of public good (the "CPG") at the Vermont Public Utility Commission (the "PUC") filed by Plaintiff Apple Hill Solar LLC (Case No. 24-3517-PET). The PUC has no jurisdiction to determine whether a Town Plan is valid.

## PARTIES

5. Plaintiff PLH Vineyard Sky LLC is a Florida limited liability company with its registered Vermont office located at 145 Pine Haven Shores, Suite 1000A, Shelburne, Vermont 05482. Plaintiff PLH Vineyard Sky LLC's single member is Thomas Melone who is a citizen of the State of Florida. Plaintiff PLH Vineyard Sky LLC is a citizen of Florida and only Florida. PLH owns the following real property in the Town: Property #23-50-16-00, 27.18 acres, (ii) Property #23-50-20-00, 40.6 acres and (iii) Property #29-50-31-00, 27.04 acres (the "Chelsea/Apple Hill Property").

6. Plaintiff Apple Hill Solar LLC is a Vermont limited liability company whose single member is Allco Finance Limited. Allco Finance Limited is a Florida corporation and a citizen of Florida. Plaintiff Apple Hill Solar LLC is a citizen of Florida and only Florida.

7. Defendant Town is a town in Vermont chartered in 1749.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to Article III, section 2 of the United States Constitution: "The judicial Power shall extend to all Cases, in Law and Equity, … between Citizens of different States." *Id*. Chief Justice John Marshall declared during the early days of the republic that "[w]e have no more right to decline the exercise of

jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821). This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because of diversity of citizenship under 28 U.S.C. §1332 and the amount in controversy exceeds $75,000.

9. The Court is empowered to grant declaratory relief by 28 U.S.C. §§ 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure.

10. This Court has personal jurisdiction over Defendant because the Defendant resides in Vermont and conducts its activities in the District of Vermont.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to this action occurred in the District of Vermont.

## FACTS APPLICABLE TO ALL COUNTS

### I. The Town Plan Expiration

12. Pursuant to 24 V.S.A. §4387, the 2015 Bennington Town Plan was set to expire on October 6, 2023.

13. Rather than engage in community outreach and involvement in updating the 2015 Town Plan as required by statute, the Town opted to try to buy itself several more years. The story that Defendant has been telling regarding the status of its town plan is simple on its face: the Defendant claims that the Town Plan was re-adopted on January 22, 2018 (i.e., 5 whole years before expiration), when the Town adopted an amendment to the Town Plan by adopting an enhanced energy element (the "Energy Amendment") and sought from the Bennington County Regional Commission (the "BCRC") (i) Act 174 certification of the Energy Amendment and (ii) approval of its Energy Amendment under 24 V.S.A. §4350.

14. To better understand the story the Town is telling, one has to understand (i) the Act 174 certification process and (ii) 24 V.S.A. §4350, which requires a regional planning commission to review the planning process of its members (the "Planning Process"). See 24 V.S.A. §4350(a)(1).

### A. Act 174 Certification.

15. Act 174 of 2016 established a new set of municipal and regional energy planning standards, which if met allow those plans to carry greater weight - substantial deference - in the section 248 siting process for energy generation before the Vermont Public Utility Commission (the "PUC"). Meeting the standards is entirely voluntary; if regions and municipalities do not wish to update their plans, they will continue to receive due consideration in the section 248 process.

16. In order to support regional and municipal planners with the process of developing or revising enhanced energy plans, the Vermont Department of Public Service (the "Department") developed a number of data tools and guidance documents. One of those tools is the "Energy Planning Standards for Municipal Plans", which is filled out by and submitted by the Town to the BCRC in order to receive confirmation of energy compliance under Act 174 (see **Exhibit 1** hereto, the "Act 174 Review Tool"). The Act 174 Review Tool is explicit in its description of how municipalities in Vermont can receive a determination of energy compliance under Act 174:

> Act 174 requires that municipal plans be adopted and approved in order to qualify for a determination of energy compliance. **In the near term, it is likely municipalities will revise and submit isolated energy plans or elements, particularly due to long planning cycles. Therefore, the plan adoption requirement can be met through an amendment to an existing plan in the form of an energy element or energy plan, as long as the amendment or plan itself is duly adopted as part of the municipal plan** and incorporated by reference or appended to the underlying, full plan (i.e., is officially "in" the municipal plan), as well as approved for confirmation with the region. (emphasis added)

5

17. In 2018 The Town desired an energy plan that would be entitled to substantial deference in the section 248 siting process for energy generation before the PUC. However, the 2015 Town Plan was not set to expire for another 5 years so the Town did exactly what the Act 174 Review Tool suggested municipalities do, adopt an isolated energy plan or element in the interim.

18. In response to the question in the Act 174 Review Tool "Has your plan been duly adopted and approved from confirmation according to 24 V.S.A. §4350?", the Town responded:

> **The Town of Bennington's enhanced energy element was adopted as an amendment to the Bennington Town Plan on Monday, January 22, 2018.** A draft plan was published in November 2017 and ___ public meetings were duly warned and held in ____ 2018 prior to adoption. The Bennington Town Plan ("Town Plan") was originally adopted on October 6, 2015. The town has requested that the BCRC confirm its plan as amended at the commission's next meeting on March 15, 2018. (emphasis added)

Faced with the choice of adopting a new town plan 5 years in advance of its regularly scheduled planning cycle or adopting an enhanced energy element as an amendment to 2015 Town Plan in order to receive the determination of energy compliance in the near term, theTown elected to adopt an amendment to the 2015 Town Plan.

19. On January 22, 2018, the Town adopted an amendment to the Town Plan by adopting the Energy Amendment. The Energy Amendment did not extend the expiration date of the 2015 Town Plan because amendments to town plans are incapable of extending expiration dates. *See* 24 V.S.A. §4385(c): "An amendment to a plan does not affect or extend the plan's expiration date." The Town then submitted the Energy Amendment (along with the Act 174 Review Tool) to the BCRC for (i) Act 174 Certification and (ii) approval of the Energy Amendment pursuant to 24 V.S.A. §4350.

B. **The BCRC Planning Process Confirmation.**

20. 24 V.S.A. §4350 requires a regional planning commission to review the planning process of its members (the "Planning Process"). *See* 24 V.S.A. §4350(a)(1). During the period of time when a municipal Planning Process is confirmed, the municipality shall be eligible to receive additional funds from the municipal and regional planning fund, among other benefits. *See* 24 V.S.A. §4350(d)(4). In order to obtain or retain confirmation of the Planning Process, a municipality must have an approved plan. *See* 24 V.S.A. §4350(b)(1). A regional planning commission shall review and approve plans of its member municipalities, when approval is requested and warranted. *Id.* Once the Defendant approved the Energy Amendment on January 24, 2018, it sought BCRC approval of the Energy Amendment under 24 V.S.A. §4350 (see **Exhibit 2**). This is the same process that Bennington followed under 24 V.S.A. §4350 for two subsequent amendments as well (see **Exhibit 3** hereto).

21. As set forth on **Exhibit 2**, on January 24, 2018, the Town sought confirmation from the BCRC (i) that the Energy Amendment met the energy planning standards (24 V.S.A. §4352) of Act 174 and (ii) approval of the 2015 Town Plan as amended by the Energy Amendment under 24 V.S.A. §4350. In response to the request, the BCRC issued a "Certificate of Energy Compliance" on March 15, 2018, and nothing else (see **Exhibit 4** hereto). In other words, not only did the BCRC not approve a newly adopted Town Plan (because there was none), the BCRC did not even approve the 2015 Town Plan as amended by the Energy Amendment. There was no BCRC approval under 24 V.S.A. §4350 in the wake of the Energy Amendment.

22. Regardless, in a throwback to the television series *Seinfeld*, when a citizen of Bennington challenged Town manager Stu Hurd's claim that the Town Plan didn't expire in 2023, Mr. Hurd said: "*It's not a lie if one believes what one's saying.*" (See **Exhibit 5** hereto)

### C. Why the Town's Position Trips at the Starting Gate.

7

23. 24 V.S.A. §4387(a) requires that re-adoption take place in accordance with 24 V.S.A. §4385 which requires public notice and two hearings as a condition precedent to duly adopting a new town plan or re-adopting an old one. The Bennington Planning Commission never issued a public notice concerning a public hearing on a "re-adoption" of the Town Plan. The Planning Commission never voted on a re-adoption of the Town Plan. The Select Board never issued a public notice concerning a public hearing on the re-adoption of the Town Plan. The Select Board never voted on a re-adoption of the Town Plan. And, of course, the requirement under §4387(b)(1)(A) that the planning commission "engage in community outreach and involvement in updating the plan" was never done. All that was ever done by the Town of Bennington on January 22, 2018, was pass an amendment to the Town Plan (i.e., the Energy Amendment).

24. No matter how comprehensive the Energy Amendment, none of the statutory requirements to re-adopt the Town Plan were satisfied. Likewise, no matter how comprehensive the Energy Amendment might have been, the BCRC has no authority to determine that the action taken by the Town is actually a re-adoption of the Town Plan rather than an amendment thereto. Under 24 V.S.A. § 4345b(e), the BCRC has no authority to perform essential legislative functions, the power to re-adopt the Town Plan being one of those essential legislative functions. The process of re-adoption cannot be short circuited by the BCRC, even if the Town asks them to short circuit it. There is no end-around the requirements of 24 V.S.A. §4385.

25. Neither the Town nor the BCRC has the authority to circumvent the requirements of (i) 24 V.S.A. §4387(a), which requires public notice and hearings on any re-adoption and (ii) 24 V.S.A. §4387(b) which requires the Planning Commission to take the following actions (none of which occurred):

    (A)    consider the recommendations of the regional planning commission provided pursuant to subdivision 4350(c)(2) of this title;

(B) engage in community outreach and involvement in updating the plan;
(C) consider consistency with the goals established in section 4302 of this title;
(D) address the required plan elements under section 4382 of this title;
(E) evaluate the plan for internal consistency among plan elements, goals, objectives, and community standards;
(F) address compatibility with the regional plan and the approved plans of adjoining municipalities; and
(G) establish a program and schedule for implementing the plan.

26. No matter how comprehensive the Energy Amendment might have been, all that was accomplished by the Select Board on that date was an adoption of the Energy Amendment. That is made abundantly clear by (1) the public notices sent out in advance of the January 8, 2018, and January 22, 2018, Select Board hearings on the Energy Amendment (the "SB Energy Amendment Hearings") (see **Exhibit 6** hereto), (2) the transcripts of the SB Energy Amendment Hearings (see **Exhibit 7** hereto), (3) the minutes of the SB Energy Amendment Hearings (**Exhibit 8** hereto), (4) the Agendas for the SB Energy Amendment Hearings (see **Exhibit 9** hereto), (5) the public notice sent out in advance of the Planning Commission meeting on October 16, 2017 discussing the Energy Amendment (the "PC Energy Amendment Hearing") (see **Exhibit 10** hereto), (6) the minutes for the PC Energy Amendment Hearing (see **Exhibit 11** hereto), (8) the Agenda for the PC Energy Amendment Hearing (see **Exhibit 12** hereto), (7) the Memorandum from the Planning Commission to the Select Board submitting the Energy Amendment for approval (see **Exhibit 13** hereto) and (8) the Certificate of Energy Compliance issued by the Bennington County Regional Commission ("BCRC") on January 22, 2018 (see **Exhibit 4** hereto).

27. One of the most telling pieces of evidence is the Act 174 Review Tool discussed above as it encapsulates the Act 174 certification process before the BCRC. The Act 174 Review Tool was filled out by, and submitted by, the Town to the BCRC in order to receive confirmation of energy compliance under Act 174. In response to the question in the Act 174 Review Tool

9

"Has your plan been duly adopted and approved from confirmation according to 24 V.S.A. §4350?", the Town responded:

> **The Town of Bennington's enhanced energy element was adopted as an amendment to the Bennington Town Pan on Monday, January 22, 2018.** A draft plan was published in November 2017 and ___ public meetings were duly warned and held in ____ 2018 prior to adoption. The Bennington Town Plan ("Town Plan") was originally adopted on October 6, 2015. The town has requested that the BCRC confirm its plan as amended at the commission's next meeting on March 15, 2018. (emphasis added)

There is no mystery as to what happened on January 22, 2018, because the Town explicitly stated what happened when it went before the BCRC seeking Act 174 certification. The Town only ever sent the Energy Amendment to the BCRC to review (see **Exhibit 2** hereto) and the BCRC only ever issued the Certificate of Energy Compliance (see **Exhibit 4** hereto).

28.  Perhaps just as telling as Act 174 Review Tool is a quick review of the Agency of Commerce and Community Development's website which includes a link to their "plan and bylaw database."[3] 24 V.S.A. § 4385(c) requires that copies of newly adopted plans and amendments shall be provided to the Commissioner of Housing and Community Development within 30 days of adoption. The 2010 Bennington Town Plan is there. The 2015 Bennington Town Plan is there. But the only thing that is there for 2018 is a copy of the Energy Amendment (*see* **Exhibit 14** hereto). Obviously if the Town Plan had been readopted in 2018, the Town would have uploaded the entire Town Plan **as required by law**. In fact, the Town as recently as August 26, 2024, was still submitting official documents and certifications to the State indicating a Town Plan adoption

---

[3] https://outside.vermont.gov/agency/ACCD/bylaws/Bylaws%20and%20Plans%20Approved/Forms/Group%20by%20Municipality.aspx?_gl=1*d1esa6*_ga*MTQzMTIxMTk2MC4xNzMzMjQzNzI5*_ga_V9WQH77KLW*MTc0NTU5MjUwNy42My4wLjE3NDU1OTI1MTMuMC4wLjA.

date of October 6, 2015 (see **Exhibit 15** hereto). Clearly, if the Town Plan had been readopted in 2018, the Town would have stated as much in its certifications to the State.

29.　　As each of the aforementioned Exhibits makes clear, the Town Plan was not re-adopted on January 22, 2018, it was simply amended by the passage of the Energy Amendment. If it was the intent to re-adopt the Town Plan, then the Town would have been required to hold public hearings on exactly that pursuant to 24 V.S.A. §4385(a). As the evidence clearly shows, the public hearings that were held were limited to the passage of the Energy Amendment and there was not **a single** mention of re-adoption of the Town Plan at any of them. If the Town sought to re-adopt the 2015 Town Plan, it would also have to abide by the procedures set forth in 24 V.S.A. §4387(b), which requires, among other things, the Planning Commission to review and update **all of the information** on which the plan is based (not just information concerning the Energy Amendment) and consider the criteria set forth in §4387(b)(1)(A) through (G) listed above, none of which occurred.[4]

30.　　As the evidence clearly indicates, the passage of the Energy Amendment was exactly that, the approval of an amendment to the Town Plan. As §4385(d) makes abundantly clear, "An amendment to a plan does not affect or extend the plan's expiration date." As such, the Town Plan expired on October 6, 2023.

---

[4] One of the requirements under §4387(b)(1)(A) is that the planning commission "engage in community outreach and involvement in updating the plan". On October 23, 2023, the Town Select Board adopted a resolution approving a Municipal Planning Grant Application from the DHCD in the amount of $26,500 to hire consultants to aid the BCRC in a comprehensive update of the Town Plan. Tellingly, this process did not occur prior to the adoption of the Energy Amendment.

## II. Why the Expiration of the Bennington Town Plan Matters to Plaintiffs.

31. Plaintiff Apple Hill Solar LLC ("AHS") filed its petition for a CPG with the PUC on November 26, 2024, which is when there was no valid Town Plan in effect. The petition is docketed as Case No. 24-3517-PET. That AHS petition was filed as a result of a prior denial of a CPG in docket no. 8454 that resulted *solely* from a purported inconsistency of the solar project with the Bennington Town Plan. In other words, but for that purported inconsistency, AHS would have been issued a CPG for its solar project. This Court issuing the requested declaratory relief will significantly increase the likelihood that the Plaintiffs' Apple Hill solar project will obtain a CPG and will be built. The Plaintiffs would have decreased costs, increased likelihood of the project being built, a decrease in the risk of losses to Plaintiffs, and increased opportunities.

32. The value of Plaintiffs' two-megawatt solar project and the costs and losses that are at issue far exceed $75,000.

33. The Town has taken final definitive positions which stand as an obstacle to the prize that Plaintiffs seek: a CPG. There are no more steps needed to make Plaintiffs' claims ripe. All requested relief involves issues where the Defendant has taken a definitive position regarding how its purported Town Plan zoning restrictions apply to the project site and Plaintiff's solar project. Each such definitive position taken by the Defendant stands in the way of Plaintiffs' land being used for solar, and the land and personal property not diminishing or losing some or all of its value. The Second Circuit's opinion in *Allco Finance Ltd. v. Klee,* 861 F.3d 82 (2d Cir. 2017) ("*Klee*") and its recent opinion in *Allco Finance Ltd. v. Roisman*, No. 22-2276, 2023 U.S. App. LEXIS 18179 *14-15, 2023 WL 4571965 (2d Cir. July 18, 2023) ("*Roisman*") establishes that Plaintiffs have standing here and that Article III's requirements are met. As here, the plaintiffs in both *Klee* and *Roisman* sought declaratory and injunctive relief challenging a decision or policy of a

governmental entity. At issue in those two cases were energy contracts, which the Second Circuit described as the ultimate prize that plaintiffs sought. Notably in both of those cases even if the plaintiffs obtained the relief they sought from the federal district court, there was no guarantee they would obtain the ultimate prize.[5] But because, as here, the government's policy stood as an obstacle to the prize plaintiffs sought, the plaintiffs had standing to challenge it. *See, Klee* at 95, fn. 10, *Roisman* at *14-15. Here, the prize that Plaintiffs seek is a CPG under 30 V.S.A. §248. Just as in *Klee* and *Roisman*, it is the Defendant's claim and its definitive position that the Town Plan did not expire on October 6, 2023, that stand as an obstacle in the Plaintiffs' way.

## CAUSES OF ACTION

### COUNT I

### DECLARATORY JUDGMENT THAT THE 2015 TOWN PLAN WAS NOT RE-ADOPTED ON JANUARY 22, 2018 AND EXPIRED ON OCTOBER 6, 2023.

34. Plaintiffs repeat and re-allege the allegations contained in each and every preceding paragraph of this Complaint.

35. As set forth above, there is an actual, present controversy concerning whether the 2015 Town Plan has expired.

36. The unconverted evidence concerning the approval process of the Energy Amendment submitted by the Plaintiffs confirms that the only action taken by the Town Select

---

[5] Success in achieving a Plaintiffs' ultimate goal, here a CPG, has never been a requirement of Article III standing and redressability. *See, e.g., discussed infra, Clinton v. City of New York*, 524 U.S. 417, 433 n. 22 (1998); *Natural Resources Defense Council, Inc. v. FDA*, 710 F.3d 71, 81 (2d Cir. 2013); *Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993)); *FEC v. Akins*, 524 U.S. 11, 25 (1998); *Utah v. Evans*, 536 U.S. 452, 464, 122 S. Ct. 2191 (2002); *Winding Creek Solar LLC v. Peterman*, 932 F .3d 861 (9th Cir. 2019). *Winding Creek* is another Allco-related case.

Board on January 22, 2018, was to adopt the Energy Amendment. There was no re-adoption of the Town Plan.

37. For the reasons stated herein, Plaintiff asks for a declaratory judgment that the 2015 Town Plan expired on October 6, 2023.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter Judgment against the Defendant as follows:

a. That this Court grant judgment in favor of Plaintiffs and against Defendant;

b. That this Court issue the declaration requested herein by Plaintiffs;

c. That the Plaintiffs be granted such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: May 2, 2025                    Respectfully submitted,

*/s/Michael Melone*
Michael Melone
Allco Renewable Energy Inc.
157 Church Street, 19th floor
New Haven, CT 06510
Phone: (212) 681-6974
Email: mjmelone@AllcoUS.com

*Attorney for Plaintiffs*